COMMONWEALTH of Pennsylvania, Appellee,

v.

Robert Chester McCULLIGAN, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 11, 2006.

Filed July 13, 2006.

Reargument Denied Sept. 19, 2006.

ence to Act 44's non-severance clause as was previously applied to "unvouchered expenses." With *Consumer Party* as the litmus, in which the Court referenced a dearth of actual evidence of improper purposes on the part of the Legislature and refused to look behind obviously problematic legislation on its own, *see Consumer Party,* 510 Pa. at 186–87, 507 A.2d at 337–38, it appears that Act 44's non-severance provision would also readily pass review. In this regard, there is also no actual evidence of improper purposes here—the majority applies a reasonable inference of an intention to intrude into the judicial function. *See* Majority Opinion at ——————, 905 A.2d at 976–78. Again, however, such inferences were no part of the *Consumer Party* decision.

3. In this regard, I would emphasize that my position is not that the Court should act in and of its own accord to invalidate Act 44's compensation plan as it relates to judicial officers. Rather, I believe that the Court should simply not disturb the express directive of the Legislature that the entire compensation plan must fall should any provision of Act 44 be deemed invalid.

Peter J. Scuderi, Philadelphia, for appellant.

Kevin J. McKloskey, Asst. Dist. Atty., Norristown, for Com., appellee.

BEFORE: LALLY–GREEN, GANTMAN, and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Robert Chester McCulligan, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his convictions of corrupt organizations,[1] possession with intent to deliver cocaine,[2] and criminal conspiracy[3] to deliver cocaine.

---

1. 18 Pa.C.S.A. § 911.

2. 35 P.S. § 780–113(a)(30).

3. 18 Pa.C.S.A. § 903.

Appellant asks us to consider whether the trial court erred in denying his motion to suppress evidence based on the coordinate jurisdiction rule. Appellant also avers that he was entitled to the production of confidential informants, and that the numerous search warrants lacked probable cause. We hold that the coordinate jurisdiction rule is inapplicable to Appellant's motion to suppress evidence. Furthermore, we hold that the trial court did not properly weigh Appellant's rights against maintaining the confidentiality of the informants when it appeared their identities were no longer an issue. Accordingly, we vacate Appellant's judgment of sentence and remand for further proceedings.

¶ 2 In late August of 2003, a Montgomery County detective (Detective) received information from a confidential informant that Appellant was selling cocaine. Under Detective's supervision, the informant purchased cocaine from Appellant. However, the police were unable to locate Appellant until October of 2003. At that moment, they contacted Appellant's federal parole agent and arranged a meeting between Appellant and the agent, after which Detective followed Appellant to a storage facility in Plymouth Meeting. Based on these actions, on October 14, 2003, Detective filed an affidavit of probable cause. In the affidavit, Detective noted his experience in narcotics enforcement and Appellant's history of drug convictions, then detailed why he found the confidential informant to be reliable:

I was able to establish the credibility of Confidential Informant number one in several different ways. Initially, I was able to verify some of the information because I was personally familiar with [Appellant] from a prior narcotic investigation conducted by our office.

The informant provided me with [Appellant]'s cellular telephone number and home address. He/she also assisted in making a controlled cocaine purchase from [Appellant]. Both Detective[,] Stephen Forzato and me were in the immediate vicinity and witnessed that very same controlled cocaine buy. We recognized [Appellant] and Lisa Penna [ (Appellant's live-in girlfriend) ] who was his passenger when they met with and sold cocaine to the informant.

Confidential informant number one admitted to me that he/she is a cocaine abuser and has been buying cocaine from [Appellant] since [Appellant]'s release from prison several months ago. He told me that he is quite familiar with the effects of cocaine and never bought anything but authentic cocaine from [Appellant].

After verifying all of the informant's information, I was completely convinced that everything the informant told me about [Appellant] is true, timely and accurate.

(Affidavit of Probable Cause, filed October 13, 2003, at 7; R.R. at 419a). The affidavit further stated that, based on Detective's experience in narcotics enforcement, he believed Appellant was storing drugs at the Plymouth Meeting facility or in his vehicle at the facility because drug traffickers rarely keep drugs at their homes. Detective sought a search warrant for the storage facility's records associated with Appellant or Lisa Penna, and the Montgomery County Court of Common Pleas issued it.[4] Upon execution of the search warrant, the police obtained Lisa Penna's leasing agreement, which authorized Ap-

---

**4.** Each of the warrants cited hereinafter was issued by a different judge in the Montgomery Court of Common Pleas.

pellant's access to the facility, and a list which recorded Penna's and Appellant's usage of the facility.

¶ 3 On November 18, 2003, a state narcotics agent informed Detective of the availability of a second confidential informant for another controlled cocaine purchase. The agent asserted that the informant was reliable because he had assisted in the recent arrest of a drug dealer, had been credible, and possessed a vast knowledge of the drug culture. The informant later met with Appellant, and the informant told the agent that Appellant offered to sell him ten kilograms of cocaine.

¶ 4 On November 20, 2003, to obtain another warrant, Detective filed a second affidavit, averring that he had conducted periodic surveillances of the storage facility; however, this affidavit did not mention the second informant. Detective further stated that he contacted management for the storage facility once he noticed Appellant's vehicle was no longer parked there, and learned that Appellant and Penna no longer rented a parking space, but instead leased only a storage locker. The search warrant application sought records associated with Appellant and Penna, including lease agreements for a storage locker. The trial court approved the application, which resulted in the police obtaining the records of a storage locker rented by Lisa Penna and a log of authorized visits to the locker.

¶ 5 On December 9, 2003, Detective applied for a third search warrant. The affidavit of probable cause reported that the storage facility's records revealed fifteen visits by Appellant to the facility between October 15 and December 5, 2003, inclusive, and that he spent an average of five minutes each time at the locker. Detective averred the locker was accessed more frequently than someone with a "legitimate use" for storage space. The affidavit did not mention any confidential informants. The trial court approved the application and issued a warrant authorizing police to enter and search Penna's locker, resulting in the recovery of over 1,000 grams of cocaine. Detective sought and received several more search warrants between December 10, 2003, and February 2, 2004.

¶ 6 On January 16, 2004, the Commonwealth sought authorization from this Court to conduct wiretaps on Appellant's pre-paid cellular telephone. The Commonwealth attached an affidavit from Detective, which cited the two confidential informants, results of the executions of previous search warrants, and activity log of Appellant's cellular telephone, which Detective received pursuant to an authorized search warrant. The affidavit also noted Detective's observation of video surveillance at the storage facility, and his observation of apparent transactions made by Appellant and his codefendant, Timothy Einsig, at a pizza shop they co-owned. Wiretap authorization was approved by this Court. After the Commonwealth conducted wiretaps and executed subsequent search warrants, the police recovered ninety-two grams of cocaine at Appellant's home and eighty-four grams of cocaine at the pizza shop.

¶ 7 On December 20, 2004, Appellant filed an omnibus pre-trial motion, seeking production of the confidential informants and suppression of evidence resulting from the search warrants and wiretap authorizations. The suppression court conducted a hearing, then denied the motions. On March 3, 2005, after a stipulated bench trial, Appellant was convicted of the above crimes and sentenced to an aggregate seventeen to thirty-five years' imprisonment. This appeal followed.

¶ 8 Appellant presents the following issues for our review:

DID THE [SUPPRESSION] COURT ERR IN APPLYING THE COORDINATE JURISDICTION RULE?

DID THE [SUPPRESSION] COURT ERR IN DENYING APPELLANT'S REQUEST TO PRODUCE THE CONFIDENTIAL INFORMANTS WHOSE INFORMATION WAS USED TO PROVIDE PROBABLE CAUSE TO PROCURE SEARCH WARRANTS?

WAS THERE PROBABLE CAUSE TO SUPPORT THE SEARCH WARRANTS?

(Appellant's Brief at 1).[5]

■ ¶ 9 Appellant first argues that the trial court incorrectly applied the coordinate jurisdiction rule in denying his suppression motion because the rule does not apply to issues that have not been previously litigated. Instead, he avers that the trial court had authority to examine whether a different judge in the court of common pleas properly determined that probable cause existed in the affidavits in approving the warrant applications. He specifically asserts that because there was no litigation of the issue of probable cause, coordinate jurisdiction was inapplicable to the suppression issue. Accordingly, Appellant concludes that the trial court erroneously relied on the coordinate jurisdiction rule in determining it could not address the propriety of the search warrants. We agree.

■ ¶ 10 Generally, "judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." *Riccio v. American Republic Ins. Co.*, 550 Pa. 254, 705 A.2d 422, 425 (1997) (citing *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331 (1995)). Courts must look to "where the rulings occurred in the context of the procedural posture of the case." *Riccio, supra* at 425. If motions differ in

kind, "a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion." *Id.* (quoting *Goldey v. Trustees of Univ. of Pennsylvania*, 544 Pa. 150, 675 A.2d 264, 267 (1996)).

¶ 11 In *Riccio*, the Pennsylvania Supreme Court addressed whether a post-trial judge was subject to the coordinate jurisdiction rule when he determined that the trial judge erred as a matter of law in defining "spine" during trial. *Id.* at 423. The *Riccio* Court examined the issue in the context of the Pennsylvania Rules of Civil Procedure, which permit a judge to order a new trial based on post-trial motions if he determines a factual or legal mistake was made during trial. *Id.* (citing Pa.R.C.P. 227.1(a)(1)). The Court also noted that Rule 227.2 permitted substitution of a post-trial judge on behalf of an unavailable trial judge. *Id.* (citing Pa. R.C.P. 227.2). Accordingly, the Supreme Court held:

> [T]he coordinate jurisdiction rule does not apply to bar a substituted judge hearing post-trial motions from correcting a mistake made by the trial judge during the trial process. To hold otherwise and not allow a judge deciding post-trial motions to overrule legal errors made during the trial process ... would render the post-trial motion rules meaningless.

*Id.* at 426.

¶ 12 In the instant matter, we find the *Riccio* Court's logic persuasive in determining the applicability of the coordinate jurisdiction rule on the search warrants. Rules 578 and 581 of the Pennsylvania Rules of Criminal Procedure permit a defendant to file an omnibus pretrial motion, which may include a motion to suppress evidence. **Compare** Pa.R.Crim.P. 578,

---

**5.** We have re-ordered Appellant's issues for    ease of disposition.

581, *with* Pa.R.C.P. 227.1(a)(1). The suppression court may hold a hearing and, if it finds that the evidence was obtained in violation of the defendant's rights, it may grant the defendant's motion to suppress. Pa.R.Crim.P. 581(E), (I). The issuing authority may not consider any evidence outside of the affidavits. Pa.R.Crim.P. 203. Because the defendant can make no argument opposing the issuance of a search warrant, the procedural posture for determining probable cause for the issuance of a search warrant differs from that for evaluating probable cause after a suppression motion is filed. *Compare* Pa.R.Crim.P. 203, *with* Pa.R.Crim.P. 578, 581. *See Riccio, supra.*

¶ 13 The search warrants were issued after only the Commonwealth submitted affidavits and argued the existence of probable cause. Appellant had no opportunity to litigate the issue until the suppression hearing, after the search warrants were issued and executed. We find no case stating that the coordinate jurisdiction rule applies to probable cause determinations for authorizing search warrants, and all of the cases cited by the Commonwealth and the suppression court involve issues that were fully litigated by all parties before a court ruled on the issue.

¶ 14 We further note that the legal implications of the Commonwealth's argument reach far beyond the instant case. If we were to accept the Commonwealth's argument and the trial court's finding, it would be impossible for any defendant to challenge search warrants issued by a different judge, for reasons completely out of his control. Should a defendant be so unfortunate as to have one trial judge issue a search warrant, but have a different judge hear his suppression motion, the Commonwealth's version of the coordinate jurisdiction rule would preclude the defendant from ever raising a suppression motion. Such interpretation of the coordinate jurisdiction rule would render suppression motions futile in a substantial number of criminal cases. Accordingly, we conclude the suppression court erred in relying on the coordinate jurisdiction rule to determine it could not address the issue of probable cause in the applications for search warrants.

■ ¶ 15 The suppression court also notes that the wiretaps were authorized by this Court, and thus believes it was without authority to suppress evidence obtained through wiretaps authorized by a higher court. We do not agree. Similar to the above analysis, the coordinate jurisdiction rule does not apply because the procedural posture of wiretap authorizations differs from that of suppression motions. *See Riccio, supra.* Accordingly, the suppression court erred in determining it could not address the suppression motion involving the wiretaps based on the coordinate jurisdiction rule.

■ ¶ 16 Our inquiry does not end here, as we may affirm the trial court's decision on any basis. *See Commonwealth v. Torres,* 564 Pa. 86, 764 A.2d 532, 541 (2001) (citing *E.J. McAleer & Co. v. Iceland Products, Inc.,* 475 Pa. 610, 381 A.2d 441, 443 n. 4 (1977)). Appellant next argues that the suppression court improperly applied the law for production of confidential informants at trial, even though he requested production of the informant only for purposes of challenging the propriety of the search warrant. Appellant contends he provided sufficient information and questioned Detective extensively enough to warrant disclosure of the informants. We agree.

Generally speaking, the production of an informant is a discovery matter and subject to the following test set forth in

*[Commonwealth v.] Bonasorte* [, 337 Pa.Super. 332, 486 A.2d 1361 (1984) ]:

we hold that a defendant seeking production of a confidential informant at a suppression hearing must show that production is material to his defense, reasonable, and in the interest of justice. By this we mean that the defendant must demonstrate some good faith basis in fact to believe that a police officer-affiant willfully has included misstatements of facts in an affidavit of probable cause which misrepresents either the existence of the informant or the information conveyed by the informant; that without the informant's information there would not have been probable cause; and that production of the informant is the only way in which the defendant can substantiate this claim.

*Bonasorte,* 486 A.2d at 1373–74. However, the *Bonasorte* rule must be considered in conjunction with the holding in *[Commonwealth v.] Miller* [, 513 Pa. 118, 518 A.2d 1187 (1986) ] that "the *[Commonwealth v.] Hall* [, 451 Pa. 201, 302 A.2d 342 (1973),] rule does not permit the disclosure of the identity of an informant relied upon by the affiant where it is established that the disclosure of such information would jeopardize the safety of the nongovernmental informant. This ruling also embraces the disclosure of information that would lead directly to the ascertainment of the identity of the informant." *Miller,* 518 A.2d at 1195.

*Commonwealth v. Brown,* 836 A.2d 989, 993–94 (Pa.Super.2003), *affirmed,* 582 Pa. 573, 873 A.2d 1275 (2005). Courts must apply a balancing test, and the balance initially weighs in favor of maintaining confidentiality of the informant's identity in order to preserve the public's interest in effective law enforcement. *In re R.S.,* 847 A.2d 685, 688 (Pa.Super.2004) (quoting *Commonwealth v. Belenky,* 777 A.2d 483, 488 (Pa.Super.2001), *appeal denied,* 581 Pa. 679, 863 A.2d 1148 (2004)). "[T]he accused must show the information is material to the defense and the request is reasonable." *Id.* (quoting *Belenky, supra* ). Courts should proceed "in a fashion that gives due regard to Appellant's right to test the veracity of the averments in the affidavit while balancing the right of the Commonwealth to withhold the [confidential informant's] identity should disclosure of that information jeopardize the [confidential informant's] safety." *Brown, supra* at 997.

¶ 17 Instantly, we note that it appears Appellant knew the identity of the first informant. At the suppression hearing, Appellant testified and contested Detective's testimony regarding the first confidential informant:

[Appellant:] Well, see, there was a problem. My girlfriend, Lisa Penna, worked at the apartment complex **where this informant also lived.** She was the— worked the intake, like when you register new apartments and everything.

\* \* \*

This girl knew that I was on federal parole. So the reason why my girlfriend had to move ... was because this girl kept harassing her saying that she automatically implicated me into the scenario. She said she was going to call my parole agent, this and that and this if she didn't get some money.

As a matter of fact, on that day, on the 29th, she called that cellular phone 13 times. 13 times she called. She had Lisa scared, so scared that Lisa had to move.

(N.T. Suppression Hearing, 3/1/05, at 130– 31; R.R. at 234a–35a) (emphasis added). The Commonwealth made no argument

that Appellant incorrectly identified the first informant, and in fact cross-examined him on the issue without any indication that his identification was mistaken.[6] Accordingly, the *Miller* rule may not apply because Appellant appears to know the identity of the informant and thus, there may be no danger in producing the first informant. *See Miller, supra.* In his testimony, Appellant asserted the reasons why the informant may have lied about him, explaining that their subsequent meeting concerned the exchange of money, not drugs. (*See* N.T. at 132; R.R. at 236a). We conclude Appellant's request was reasonable and material to his defense. *See In re R.S., supra.* Because it appears that Appellant knew the identity of the informant, the balance does not appear to weigh in favor of keeping the informant's identity confidential.[7] *See Brown, supra.* Accordingly, we remand for reconsideration of Appellant's motion for disclosure of the first confidential witness.[8]

¶ 18 Next, we examine whether the court erred in denying Appellant's motion to disclose the second confidential informant, whose existence Appellant challenged during his testimony at the suppression hearing. (*See* N.T. at 263; R.R. at 368a). Detective testified that he did not arrange a controlled purchase with the second informant because the informant's "cover was blown." (*See* N.T. at 223; R.R. at 327a). Again, in balancing the "blown cover" with Appellant's assertion that the second informant did not exist, we find it necessary for the trial court to consider whether the balance shifted in favor of Appellant and warranted disclosure of the second confidential informant. *See In re R.S., supra.* Therefore, we remand for a reconsideration of Appellant's motions to produce the confidential informants.

¶ 19 In his final issue, Appellant argues that the affidavits in support of the search warrants did not merit a finding of probable cause. Because the suppression court did not reach the merits of Appellant's suppression motion, we decline to address this issue. Upon remand, the trial court shall reconsider Appellant's confidential informant motions. Once that claim is resolved, Appellant may request an additional hearing for reconsideration of all his suppression claims and for a probable cause determination. The suppression court shall then issue findings of fact and address the merits of all suppression claims raised by Appellant before and after remand.

¶ 20 Judgment of sentence vacated. Case remanded for proceedings consistent

---

6. The Commonwealth, on cross-examination, re-affirmed Appellant's assertion that the informant had a feud with Penna for purposes of establishing whether Appellant thought Detective lied about the controlled purchase by the first informant. (*See* N.T. at 134–35; R.R. at 238a–39a).

7. We note that in *Brown*, the judgment of sentence was vacated in part because the police officers lost sight of the informant once he or she entered the appellant's apartment building and could not verify that the informant received the contraband directly from the appellant. *Brown, supra* at 994. Instantly, although the affidavit stated that Detective witnessed the transaction, we do not find that this distinction compensates for the difference in balance created by Appellant's apparent identification of the informant.

8. If on remand the Commonwealth maintains that Appellant misidentified the confidential informant, the suppression court may conduct an *in camera* hearing to determine whether Appellant is correct in his identification of the informant. *But see Miller, supra* at 1195 (stating courts may not conduct *in camera* hearing without defendant or defense counsel present if it represents critical stage of trial).

with this Opinion. Jurisdiction relinquished.