J-S60037-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT COSTEN, | : | |
| | : | |
| Appellant | : | No. 3600 EDA 2015 |

Appeal from the Judgment of Sentence June 12, 2014,
in the Court of Common Pleas of Delaware County,
Criminal Division at No(s):  CP-23-CR-0001094-2012

BEFORE:  SHOGAN, OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED NOVEMBER 16, 2016**

Robert Costen (Appellant) appeals *nunc pro tunc* from the June 12, 2014, judgment of sentence imposed following his convictions by a jury for two counts of robbery, and one count each of criminal attempt homicide, aggravated assault, and firearms not to be carried without a license.  We affirm.

At sentencing, the trial court offered the following summary of the underlying facts of this case.

> On Thursday, December 15th, 2011, at approximately 2:57 p.m., [Appellant] entered the Dollar Magic Store, located at 721 South Chester Road, Springfield Township, Delaware County.  There were video cameras inside and outside the store, which captured much of what transpired.  [Appellant] was wearing a distinctive jumpsuit, and carrying a distinctive backpack when he entered the store.  [Appellant] approached the cashier, Shampa Deb, and ordered her to open the cash register, or he would shoot her.  Ms. Deb noticed that [Appellant] had a handgun.  At about

*Retired Senior Judge assigned to the Superior Court.

the same time Ms. Deb noticed the store manager, Abelardo Feliciano, [known] as Chickie, coming around the aisle, and she alerted him that [Appellant] had a gun and want[ed] money. [] Feliciano grabbed [Appellant], and a struggle ensued. During the struggle, [] Feliciano was shot in the area of the right shoulder. [] Feliciano then punched [Appellant], causing him to drop the gun, after which [] Feliciano shot [Appellant]. Video captur[ed] [Appellant] exiting the store, stumbling to his car, getting into his car, and then starting to drive away. However, apparently due to blood loss, [Appellant] was only able to move the car a short distance. When police arrived, they found [Appellant] in the driver's seat bleeding profusely. Paramedics arrived within minutes. [Appellant] was transported to the trauma center at Crozer-Chester Medical Center.

N.T., 6/12/2014, at 22-23.

Appellant was arrested and charged with, *inter alia*, the aforementioned crimes as a result of this incident. Trial was scheduled for May 21, 2012, but issues arose related to Appellant's competency to stand trial. On September 7, 2012, Appellant was examined by Dr. Steven Mechanick.[1] Dr. Mechanick also interviewed Appellant's mother and reviewed other records. On September 24, 2012, Dr. Mechanick issued his report "specifically stat[ing] that he [had] reviewed a report authored by Richard G. Ivins, Ph.D., a neuropsychologist, who found [Appellant] to be incompetent." *Id*. at 24.[2] "Dr. Mechanic[k] opined that [Appellant] was [feigning] memory and cognitive impairment, and that he was capable of understanding the charges that he faced, the possible consequences if

---

[1] The record refers to him as both Dr. Mechanic and Dr. Mechanick. Dr. Mechanick is the correct spelling, and we will use that throughout this memorandum.

[2] Dr. Ivins issued his report on June 21, 2012.

convicted, and courtroom procedures, and that he was competent to stand trial." *Id*. at 25.

At a status conference on October 22, 2012, Appellant's counsel advised the trial court of Dr. Mechanick's findings and opinion, and based upon Dr. Mechanick's report, stipulated to Appellant's competence to stand trial and aid in his defense. Trial was scheduled for November 19, 2012.

On November 19, 2012, the Commonwealth placed on the record the offer made to Appellant. That offer would have resulted in Appellant serving an aggregate term of nine to 18 years of incarceration. In addition, the Commonwealth advised Appellant that if convicted he faced a mandatory ten years of incarceration for this being his second strike pursuant to 42 Pa.C.S. § 9714(a)(1). Appellant rejected the offer. Trial was scheduled for February 25, 2013.

On February 19, 2013, pre-trial issues were addressed by the trial court. Among the things Appellant had requested from the Commonwealth but not yet received were "immigration records and criminal records of any of the victims." N.T., 2/19/2013, at 21. At the hearing, the Commonwealth represented that the victims do not have criminal histories, but that it did not "ask about immigration status of them." *Id*. Appellant responded that he believed Feliciano was an "illegal alien" and that would show that he did not have a propensity for being law abiding because he did not "abide by the law when [he came] into the country." *Id*. Appellant also indicated

- 3 -

Feliciano's status would show "bias," and he could be impeached on that basis. *Id*. at 22. The trial court did not grant or deny Appellant's request at that time; instead, it stated that Appellant could ask Feliciano questions during trial, and the trial court would rule on any objections by the Commonwealth.

On February 21, 2013, Appellant filed a motion for reconsideration specifically requesting information about Feliciano's immigration status. That trial court denied Appellant's request.

Thereafter, the trial court was advised by Appellant's counsel that he would need more time to prepare and would like the Commonwealth to renew the offer. On February 25, 2013, the Commonwealth placed the offer back on the record. Although the offer was slightly different, the recommended times of incarceration were the same. Defense counsel stated that it would be beneficial if Appellant had the opportunity to discuss the offer with his mother and asked to continue the trial.

On Friday, March 8, 2013, Appellant informed the trial court that he was rejecting the offer, and jury selection began. Appellant was found guilty on all charges. Sentencing was scheduled for June 13, 2013. The trial court ordered a pre-sentence investigation report, as well as psychological and psychiatric evaluations of Appellant.

Appellant subsequently was examined by Arthur D. Boxer, M.D. In his April 4, 2013 report, Dr. Boxer stated that Appellant "did not appear to be at

all competent during the course of the evaluation, and Dr. Boxer recommended a neurological and psychological evaluation." *Id*. at 27. Subsequently, Jerry M. Lazaroff, Ph.D., issued a report dated May 14, 2013. He stated that Appellant "refused to speak with him." *Id*.

On June 13, 2013, Appellant filed a motion for judgment of acquittal arguing that he was not competent during his trial. On June 27, 2013, Appellant filed a petition for incompetency based upon Dr. Boxer's report. The Commonwealth contested the report, and the trial court granted the Commonwealth's motion to have Appellant examined by its expert, Dr. Timothy Michals. Dr. Michals examined Appellant on September 9, 2013. Dr. Michals concluded that Appellant's "behavior is characterized by malingering. I agree with Dr. Mechanic[k]'s opinion that [Appellant] is feigning memory and cognitive impairments." Report of Dr. Michals, 11/20/2013, at 5.

Competency hearings were scheduled and held over the following months. On March 3, 2014, Dr. Ivins testified about Appellant's incompetency based upon his report dated June 21, 2012, where he had found Appellant incompetent. However, Dr. Ivins had not examined Appellant since that time. Dr. Boxer testified on March 27, 2014, stating that he "was not certain about [Appellant's] competency and that's why [he] asked for the … examinations by a neurologist." N.T., 3/27/2014, at 31. On

May 9, 2014, the trial court found that Appellant was competent at the time of trial and was competent to proceed with sentencing.

On June 12, 2014, Appellant was sentenced to an aggregate term of incarceration of 17½ to 35 years.[3] Appellant filed post-sentence motions, which were denied on October 17, 2014. Appellant filed the instant appeal *nunc pro tunc* after his appellate rights were reinstated. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant sets forth three issues for our review.

> A. Whether the trial court erred in denying [Appellant's] pre-trial motion filed February 21, 2013 wherein [Appellant] requested discovery and inspection of immigration information for Commonwealth witness [] Feliciano as per [Pa.R.Crim.P. 573(B)]?
>
> B. Whether the trial court erred by denying [Appellant's] motion for judgment of acquittal or new trial filed June 13, 2013 based on findings of his incompetency by Doctors Ivins and Boxer?
>
> C. Whether the mandatory minimum sentence of 10 years imposed upon [Appellant] at sentencing under 42 Pa.C.S. § 9714 based on "second strike" is illegal under ***Alleyne v. United States***, 133 S.Ct. 2151 (2013)?

Appellant's Brief at 8 (trial court answers omitted).

Appellant first argues that the trial court erred by denying his pre-trial motion to permit discovery and inspection of Feliciano's immigration records pursuant to Pa.R.Crim.P. 573(B)(2)(a)(iv). Appellant's Brief at 15.

---

[3] Because this was Appellant's second crime of violence, his sentence included a mandatory minimum term of ten years of incarceration pursuant to 42 Pa.C.S. § 9714(a)(1). ***See*** N.T., 6/12/2014, at 33-34.

Specifically, Appellant suggests that "if [Feliciano] is an illegal immigrant, it would be appropriate and relevant evidence that would undermine his testimony and would demonstrate a lack of law-abidingness and truthfulness." *Id*.

This rule provides the following, in relevant part:

**(B) Disclosure by the Commonwealth**.

\*\*\*

(2) *Discretionary With the Court*.

(a) In all court cases, … if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

\*\*\*

(iv) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

Pa.R.Crim.P. 573(B)(2)(a)(iv).

Thus, to satisfy his burden to require disclosure under this rule, an appellant must demonstrate that the information he is requesting is material to the preparation of his case; that it is reasonable; and that the information

disclosed would be in the interests of justice. *See id*. "With regard to [a defendant's] burden of proving the requested information is material and reasonable, [he or she] must show a reasonable probability that the information gained from the discovery would lead to evidence that would exonerate him." *Commonwealth v. Garcia*, 72 A.3d 681, 684 (Pa. Super. 2013). In addition, we "review the trial court's ruling … for an abuse of discretion." *Id*.

Instantly, Appellant was seeking information about Feliciano's immigration status to aid in his ability to impeach Feliciano's credibility. At trial, Feliciano offered testimony identifying Appellant as the perpetrator of this crime and helping to establish the course of events. However, the Commonwealth had ample other evidence to satisfy both purposes.

For example, with respect to Appellant's identity, Feliciano testified he shot Appellant near the belly button during the course of this incident. N.T. 3/12/2013, at 132. This testimony was objectively corroborated by Officer Michael Montgomery who found Appellant near the scene of this incident passed out in his vehicle with a pool of blood in his lap. N.T., 3/13/2013, at 17. Furthermore, Dr. Wassim Habre, who treated Appellant at Crozer-Chester Medical Center shortly thereafter, testified that Appellant had a gunshot wound in his groin area. Thus, Appellant's being able to impeach Feliciano's credibility would not have changed the jury's determination that it was Appellant who was involved with this incident.

Moreover, in establishing the chain of events, the jury also was able to see almost the entire incident from the store's surveillance video. In addition, Deb testified about how the incident occurred, and Feliciano's gunshot wound speaks for itself. Based on the foregoing, we conclude that Appellant has not satisfied his burden in establishing a "reasonable probability that the information gained from the discovery would lead to evidence that would exonerate him." **Garcia**, 72 A.3d at 684. Accordingly, we hold the trial court did not abuse its discretion in denying Appellant's pre-trial discovery request.[4]

Appellant next argues that the trial court erred in denying his motion for judgment of acquittal wherein he challenged his competency to stand trial.[5] Appellant's Brief at 16-19. Appellant argues that even though he gave "an appearance of cooperation with trial counsel, counsel's own post-verdict motion avers that just the opposite was the case…. Passing on two Commonwealth offers of 9 to 18 years in the face of the aforesaid evidence

---

[4] The trial court denied Appellant's discovery motion by concluding that the "immigration status of [Feliciano] is not relevant to the guilt or innocence of [Appellant]. Rather, this issue is raised merely in an effort to prejudice the jury against [Feliciano]." Order, 2/26/2013, at n.1. However, "we may affirm the trial court's decision on any basis" apparent from the record. **Commonwealth v. McCulligan**, 905 A.2d 983, 988 (Pa. Super. 2006).

[5] Pennsylvania Rule of Criminal Procedure 704(B)(1) provides that "under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial."

clearly demonstrates that [Appellant] lacked [the ability to make rational decisions]." Appellant's Brief at 19.

We consider the following principles in conducting this analysis.

A defendant is presumed to be competent to stand trial. Thus, the burden is on the defendant to prove, by a preponderance of the evidence, that he was incompetent to stand trial. In order to prove that he was incompetent, the defendant must establish that he was either unable to understand the nature of the proceedings against him or unable to participate in his own defense.

Stated otherwise, the relevant question in a competency determination is whether the defendant has sufficient ability at the pertinent time to consult with counsel with a reasonable degree of rational understanding, and to have a rational as well as a factual understanding of the proceedings.

We extend great deference to the trial judge's determination as to competency because he or she had the opportunity to observe directly a defendant's behavior. Furthermore, we note that it is a proper exercise of the trial court's discretion to accept one expert witness's opinion over that of a conflicting opinion where the record adequately supports such a resolution.

**Commonwealth v. Flor**, 998 A.2d 606, 617-18 (Pa. 2010) (citing

**Commonwealth v. Pruitt**, 951 A.2d 307, 316 (Pa. 2008)).

As the trial court pointed out, Appellant's counsel "stipulated to Appellant's competency" prior to trial. Trial Court Opinion, 3/14/2016, at 10. Additionally, the trial court viewed Appellant "actively participating with his counsel" throughout trial. **Id**. In fact, the trial court noted the following at sentencing.

This [court] has had ample opportunity to observe [Appellant] over the past two years. At all times, [Appellant] did not exhibit

- 10 -

any difficulty in communicating with [d]efense counsel, nor did he exhibit an inability to comprehend what was taking place. In fact, several times, this [court] noted on the record that [Appellant] was participating in proceedings.

N.T., 6/12/2014, at 30.

Throughout the length of this case, the only doctor who testified that Appellant was incompetent was Dr. Ivins, who last saw Appellant in 2012. The trial court found Dr. Ivins' testimony to be not credible. *See* N.T., 6/12/2014, at 28. Alternatively, the trial court found the testimony and reports of Dr. Boxer, Dr. Mechanick, and Dr. Michals, all of whom found Appellant competent, to be credible. *Id*. at 28-29; Trial Court Opinion, 3/14/2016, at 11. Based on the reports and testimony of the credited doctors, as well as the trial court's observations of Appellant, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for judgment of acquittal filed prior to sentencing.

Finally, Appellant argues that his sentence, which included a ten-year mandatory minimum term for his prior conviction pursuant to 42 Pa.C.S. § 9714, is illegal under the holding in *Alleyne v. United States*, 133 S.Ct. 2151 (2013). However, "[i]n *Alleyne*, the Supreme Court of the United States held that the Sixth Amendment requires that any fact—**other than a prior conviction**—that increases a mandatory minimum sentence for an offense must be submitted to the jury and proven beyond a reasonable doubt. Importantly, *Alleyne* did not overturn prior precedent that prior convictions are sentencing factors and not elements of offenses."

*Commonwealth v. Reid*, 117 A.3d 777, 784 (Pa. Super. 2015) (emphasis added). Appellant recognizes the existence of this exception, *see* Appellant's Brief at 21, but argues that it violates the spirit of *Alleyne*.[6] Nonetheless, "[t]his Court is bound by existing precedent under the doctrine of *stare decisis* and continues to follow controlling precedent as long as the decision has not been overturned by our Supreme Court." *Commonwealth v. Reed*, 107 A.3d 137, 143 (Pa. Super. 2014). Accordingly, Appellant is not entitled to relief on this basis.

Because Appellant has not presented to this Court any issue that warrants relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2016

---

[6] On August 6, 2016, our Supreme Court granted a petition for allowance of appeal on this issue. "Should the mandatory minimum sentence imposed by the trial court under 42 Pa.C.S.A. § 9714 be vacated, and this matter remanded for a new sentencing hearing, due to the fact that § 9714 is unconstitutional as currently drafted?" *Commonwealth v. Bragg*, No. 67 EAL 2016, 2016 WL 4142109, at *1 (Pa. Aug. 4, 2016).