**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Eugene BELENKY, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 16, 2001.

Filed May 9, 2001.

John Packel, Public Defender, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Commonwealth, appellee.

Before EAKIN, MONTEMURO * and BECK, JJ.

* Retired justice assigned to Superior Court.

EAKIN, J.:

¶1 Eugene Belenky appeals from a judgment of sentence imposed following his conviction for possession of a controlled substance, possession of a controlled substance with intent to deliver and possession of drug paraphernalia. Appellant argues the evidence supporting his conviction should have been suppressed because the search warrant misidentified his address, and that the identity of a confidential informant should have been disclosed. We find no error, and affirm.

¶2 On January 30, 1999, a confidential informant advised Philadelphia Police Officer Robert Friel that drugs were being sold from 4252 Salem Street, Apartment Four. Officer Friel and the informant went to what they believed to be this address. Apartment Four is accessible from an alley connecting Salem Street and Frankford Avenue, is the same color as the building fronting Salem Street, and is identified only by "APT 4" painted next to the door. They knocked on the door and were admitted by appellant, who asked what they needed. The informant answered "two," and Officer Friel gave appellant ten dollars. Appellant took the money and gave the informant two packets of cocaine.

¶3 Based on this sale, Officer Friel obtained a search warrant for the premises, which he described as 4252 Salem Street, Apartment Four. He executed the warrant February 2, 1999 at the same alleyway apartment in which he met appellant three days earlier, and found appellant with packets of heroin and cocaine. Officer Friel also found several bills addressed to appellant at Apartment Four, 4251 Frankford Avenue, not 4252 Salem Street; what the officer had taken to be a single building between the two streets was in fact two buildings, and Apartment Four was part of the building fronting Frankford Avenue.

¶4 Appellant moved to suppress the evidence based on the inaccurate address in the warrant. After a hearing, the suppression court denied this motion. Appellant waived a jury trial, and was found guilty. Following sentence, appellant renewed his challenge to the denial of his motion to suppress, which the trial court also denied. This timely appeal followed.

¶5 Appellant claims the inaccurate address in the warrant rendered the search unconstitutional: "The police officer mistakenly believed the address of the building in question was Salem Street (the address in the warrant) and not Frankford Avenue. He was wrong. Hence, the police did not have a valid warrant for the place they eventually searched and therefore, the search was illegal." Appellant's Brief, at 8. Appellant emphasizes Officer Friel's failure to verify the address before seeking the warrant, and admonishes us not to "lean over backwards" to excuse this, noting there is no good faith exception to the warrant requirement in Pennsylvania. See *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991).[1]

¶6 The Rules of Criminal Procedure include a particularity requirement: "Each search warrant shall be signed by the issuing authority and shall: ... (c) name or describe with particularity the person or place to be searched." Pa.R.Crim.P. 2005;[2] The Comment to Rule 2005 ex-

---

1. In *Edmunds*, Pennsylvania rejected the good faith exception to the exclusionary rule, *see United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984), as inconsistent with the Pennsylvania Constitution. However, that exception concerns warrants later found to be unsupported by probable cause, and the question in this case is particularity, not probable cause.

2. As of April 1, 2001, Rule 2005 has been renumbered as 205.

plains: "Paragraphs (b) and (c) are intended to proscribe general or exploratory searches by requiring that searches be directed only towards the specific items, persons, or places set forth in the warrant. Such warrants should, however, be read in a common sense fashion and should not be invalidated by hypertechnical interpretations." Similarly, the Supreme Court has held a "practical, common-sense" approach should be taken in determining whether the place to be searched is specified with sufficient particularity. *Commonwealth v. Carlisle*, 517 Pa. 36, 534 A.2d 469, 472 (1987).

¶ 7 The Pennsylvania Supreme Court has concluded Article 1, Section 8 of the Pennsylvania Constitution affords greater protection than the Fourth Amendment, *Edmunds, supra,* including a more demanding particularity requirement; the description must be as particular as reasonably possible. *Commonwealth v. Grossman*, 521 Pa. 290, 555 A.2d 896, 899 (1989). "The twin aims of Article 1, Section 8 are the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause." *Commonwealth v. Waltson*, 555 Pa. 223, 724 A.2d 289, 292 (1998).

> In order to protect these twin aims, a warrant must describe the place to be searched and the items to be seized with specificity, and the warrant must be supported by probable cause. The place to be searched must be described "precise enough to enable the executing officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity."

*Id.,* at 292 (quoting *In re Search Warrant B–21778*, 341 Pa.Super. 350, 491 A.2d 851, 856 (1985), *aff'd,* 513 Pa. 429, 521 A.2d 422 (1987)).

¶ 8 Appellant points to *Commonwealth v. Muscheck*, 460 Pa. 590, 334 A.2d 248 (1975) in support of his argument. *Muscheck* involved an affidavit listing two separate addresses and one individual, William Barton; Barton apparently owned both properties, but was not the target of the search. The suspect, Muscheck, was not mentioned at all, and the affidavit failed to specify at which of Barton's two addresses the underlying facts arose. Further, the description of the premises in the affidavit did not match the layout of the premises searched; the affidavit described a separate bedroom, while the apartment searched was one large room. The court held the ambiguity on the face of the affidavit precluded a finding of probable cause, and the variance between the premises described in the affidavit and the premises searched suggested the two were simply not the same.

¶ 9 Unlike *Muscheck*, there is no question probable cause for the present search existed; there is no ambiguity about where the underlying events took place. Officer Friel obtained the warrant after personally buying cocaine from appellant inside this apartment. As the same officer executed the warrant, there is no question the apartment described in the affidavit was the same apartment he searched only three days later. The description in the affidavit matched appellant's apartment in every respect but one—the street address was incorrect. While this error might confuse the postman, a house number is neither a touchstone or talisman that ends the inquiry. As this was not an error that misled the magistrate in the assessment of probable cause, impeded the officer's assessment of the proper venue to be searched, or hampered a reviewing court's ability to determine the scope of the search, we find *Muscheck* inapposite.

¶ 10 The present case is closer to *Commonwealth v. Kiessling,* 380 Pa.Super. 442, 552 A.2d 270 (1988), where a search warrant was directed at a house where separate floors were separate residences. The warrant incorrectly identified the target, Kiessling, as living on the second floor; in fact he lived on the first floor. When police executed the warrant, they went to the second floor as the warrant specified; realizing the mistake, they went to the first floor and searched the correct residence. Kiessling asserted the warrant failed to adequately describe the place to be searched. Our Court disagreed, noting there was no claim the warrant failed to adequately describe the person or things to be seized, or that probable cause was lacking. The court also found it significant that despite the error, only Kiessling's residence was searched, which supported the conclusion that the description in the warrant was sufficient to identify the correct residence. The court held the factual mistake did not invalidate an otherwise proper search warrant.

¶ 11 Appellant attempts to distinguish *Kiessling.* He emphasizes Officer Friel's failure to verify the accuracy of the address before obtaining the warrant, which he contends renders the search unreasonable, and thus constitutionally infirm. However, the validity of a search must be determined by what was done, not by what in hindsight another might have done. Whether the officer could have caught the numbering error isn't the question; the proper issue is whether that affected probable cause or the ability to identify the premises to be searched.

¶ 12 As the officer searched the premises for which he demonstrated probable

cause, and nowhere else, we are not "leaning over" backwards or otherwise, when we find no error of constitutional magnitude. As in *Kiessling,* probable cause existed, the warrant specified with particularity the things to be seized, and only the appropriate premises were searched. The impact of the incorrect address was explained by the trial court: "[W]e do not have a situation where the police went to the 'wrong' location. Rather, they simply did not properly describe the 'right' location." Trial Court Opinion, 8/28/00, at 6. Officer Friel could be criticized for failing to verify the accuracy of the address, but the trial court found this mistake to be an objectively reasonable one, and we see no reason to disagree.

¶ 13 As noted, the particularity requirement seeks to preclude general or exploratory searches, and clearly the present search was neither. The particularity requirement is meant to further the twin aims of protecting privacy and ensuring warrants are based on probable cause; we fail to see how this search offends either. The incorrect address does not invalidate the warrant, and the trial court correctly refused to suppress the evidence.

¶ 14 Appellant also contends the trial court erred by denying his motion to disclose the identity of the confidential informant who participated in the January 30 drug sale, as his defense was that of mistaken identity.[3] Our standard of review in such cases is to determine whether the trial court abused its discretion in denying appellant's request for discovery. *Commonwealth v. Roebuck,* 545 Pa. 471, 681 A.2d 1279, 1282 (1996).

■ ¶ 15 Pennsylvania Rule of Criminal Procedure 305(B) provides:

---

**3.** Appellant now asserts his defense is based on misidentification or police fabrication. Appellant's Brief, at 15. The record is without any allegation of police fabrication. As that allegation was not raised before the trial court, we decline to consider it here. *See* Pa.R.A.P. 302(a).

(2) Discretionary With the Court.

(a) In all court cases, except as otherwise provided in Rule 263 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(i) the names and addresses of eyewitnesses[.]

Pa.R.Crim.P. 305(B)(2)(a)(i).[4] The Pennsylvania Supreme Court has adopted the following guidelines:

> We believe that no fixed rule with respect to disclosure [of the confidential informant's identity] is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284, 287 (1967) (quoting *Roviaro v. United States*, 353 U.S. 53, 60–62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)). This balance is initially weighted toward the Commonwealth, which holds a qualified privilege to maintain an informant's confidentiality to preserve the public's interest in effective law enforcement. *Commonwealth v. Bing*, 551 Pa. 659, 713 A.2d 56, 58 (1998) (citing *Commonwealth v. Herron*, 475 Pa. 461, 380 A.2d 1228 (1977)). However, the balance tips in favor of disclosure where guilt is found solely on police testimony from a single observation and testimony from a disinterested source, such as the informant, is available. *Id.* (citing *Carter*, at 287).

¶ 16 Before the informant's identity may be revealed, however, the accused must show the information is material to the defense and the request is reasonable. *Id.* (citing *Commonwealth v. Roebuck*, 545 Pa. 471, 681 A.2d 1279, 1283 (1996)); Pa. R.Crim.P. 305(B)(2)(a). The defendant need not predict exactly what the informant will say, but he must demonstrate a reasonable possibility the informant could give evidence that would exonerate him. *Roebuck*, at 1283. More than a mere assertion that disclosure of the informant's identity might be helpful is necessary. *Herron*, at 1230. Only after this threshold showing that the information is material and the request reasonable is the trial court called upon to determine whether the information is to be revealed. *Roebuck*, at 1283.

¶ 17 The trial court found appellant failed to make this showing. In denying appellant's motion, the court reasoned:

> The defense in the instant case made no attempt to offer any evidence that would even remotely suggest that there was a misidentification of the defendant at either of the two occasions that he was observed by Officer Friel. There was also no evidence tendered that would bolster an argument that the defendant was misidentified by the confidential informant. Thus, there was no showing that the identity of the confidential informant would have any relevance to any proposed defense by Mr. Belenky.

Trial Court Opinion, at 5–6.

¶ 18 At the hearing on the motion, appellant's counsel offered extensive evi-

4. As of April 1, 2001, Rule 305 has been renumbered as 573.

dence showing Officer Friel had misidentified the street address of appellant's apartment. N.T., 11/18/99, at 22–28. The following exchange between the court and appellant's counsel then ensued:

THE COURT: Mr. Montoya, what is the basis of this motion?

MR. MONTOYA: To compel the confidential informant's—

THE COURT: I know what you are asking for but factually what is it that you are establishing as a basis for the mistaken identity?

MR. MONTOYA: Pardon me?

THE COURT: The addresses?

MR. MONTOYA: That's correct, Your Honor.

THE COURT: That's all?

MR. MONTOYA: That's correct.

*Id.*, at 37–38.

■ ¶ 19 As this exchange illustrates, the trial court had difficulty seeing what relevance this evidence had to appellant's misidentification theory; so do we. While the evidence was relevant to appellant's attack on the warrant's particularity, it did *not show the police misidentified appellant*, and provides no support for a mistaken identity defense. Identity of the house number and identity of the dealer inside the house are disparate notions, neither of which reflects on the other under these facts.

¶ 20 The cases appellant cites involve charges based on single transaction sales; that is not the charge here. Appellant was charged with the offenses resulting from the search, not the sale, and the validity of that search has nothing to do with the identity of the man who sold drugs to the officer on January 30. Whether that man was appellant or not, it established proba-

ble cause and the search would still have occurred three days later. At the search, appellant would have been found in possession of the drugs, no matter the seller's identity three days before. We see no indication the informant was present when the search took place; the informant could add nothing to the question of identity then, which is the only identity relevant to guilt.

¶ 21 The trial court did not err in finding appellant failed to meet his burden of showing the requested information was material to his defense. This threshold unfulfilled, the trial court had no duty to balance the competing interests to determine if disclosure was required. Accordingly, the trial court did not abuse its discretion by denying appellant's motion to disclose the identity of the confidential informant.

¶ 22 Judgment of sentence affirmed.