J-S77014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| MARC S. BATES A/K/A MARC S. BATTES | |
| Appellant | No. 291 MDA 2016 |

Appeal from the Judgment of Sentence August 26, 2015
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001906-2014

BEFORE: PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED FEBRUARY 13, 2017**

Appellant, Marc S. Bates, appeals from the judgment of sentence entered after a jury found him guilty of delivery of a controlled substance, cocaine. Bates raises five challenges to the conviction, including the sufficiency of the evidence, weight of the evidence, and evidentiary rulings by the trial court. After careful review, we conclude that two of the trial court's evidentiary rulings were based upon incorrect premises. In both instances, the trial court's ruling precluded further development of the record to allow consideration of whether the evidence was ultimately admissible. As a result, we affirm in part, and vacate and remand for a hearing on the issues identified in this memorandum.

---

[*] Retired Senior Judge assigned to the Superior Court.

On October 14, 2014, the Commonwealth charged Bates with delivery of cocaine and criminal use of a communications facility. At trial, the Commonwealth presented evidence that Sergeant Brett Hopkins of the Lebanon County Drug Task Force utilized a confidential informant ("CI") to introduce him to a cocaine dealer known only as "Mighty Mike." N.T., Trial, 6/10/15, at 4-8. The CI contacted Mighty Mike and arranged for a cocaine transaction. *See id*., at 9.

Shortly before 10 p.m., a white car, later determined to be Bates's, pulled up on the street in front of Sergeant Hopkins and the CI. *See id*., at 9; 33-34. Sergeant Hopkins testified that he saw, but could not identify, a Hispanic female driving the vehicle. *See id*., at 26. A black male exited the vehicle and approached the CI. *See id*., at 9. Sergeant Hopkins handed the CI $100 of "prerecorded drug task force funds," and the CI immediately handed the money to the black male. *Id*. In exchange, the man handed the CI a white envelope containing crack cocaine and then quickly departed. *See id*., at 10.

The transaction lasted no more than a minute. *See id*., at 26. During that time, Sergeant Hopkins stood within inches of the black male. *See id*., at 17. He stated that he got a clear look at the man's face. *See id*., at 28. Sergeant Hopkins positively identified Bates as the man who handed the envelope to the CI. *See id*., at 8.

Bates pursued a mistaken identity defense at trial. In furtherance of this strategy, he sought pre-trial disclosure of the identity of the CI. The trial court denied this request. Furthermore, Bates sought to present the testimony of his girlfriend, Ali Marinkov. Bates proffered that Marinkov would testify that during the time in question, she would take Bates's car with people other than Bates to engage in narcotics transactions. The trial court barred Marinkov's testimony on the grounds that she was an undisclosed alibi witness. Finally, Bates sought to introduce a picture of himself and his brother in an attempt to bolster his argument that Sergeant Hopkins had mistakenly identified him. The trial court denied admission of the photograph on the ground that Bates could not present the testimony of the person who had taken the photograph.

The trial court entered a directed verdict on the criminal use of a communications facilty charge, and the jury convicted Bates on the delivery of cocaine charge. Bates filed a post-sentence motion, which the trial court denied. This timely appeal followed.

In his first argument on appeal, Bates argues that the evidence at trial was insufficient to establish his identity as the perpetrator. Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is

established beyond a reasonable doubt. *See Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa. Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *See id*. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. *See id*. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. *See Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa. Super. 2004). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Bruce*, 916 A.2d at 661 (citation omitted).

As noted above, Sergeant Hopkins testified that he was within inches of the perpetrator as the transaction occurred. He positively identified Bates as the perpetrator. Furthermore, it is undisputed on appeal that the vehicle used by the perpetrator was Bates's, and driven by Bates's girlfriend, Marinkov. The jury was entitled to credit these facts and draw the reasonable inference that Bates was the perpetrator. Bates is due no relief on his first issue on appeal.

Next, Bates argues that the verdict was against the weight of the evidence.

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (internal citations omitted).

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

*Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (internal quotes and citations omitted).

The trial court found that the verdict did not shock its conscience due to Sergeant Hopkins's positive identification. We cannot conclude that this is an abuse of discretion, and therefore Bates's second issue on appeal merits no relief.[1]

_____

[1] We base this analysis on the record as it currently exists. Obviously, the trial court's evidentiary rulings shaped this record in ways that may

*(Footnote Continued Next Page)*

- 5 -

In his third issue, Bates contends that the trial court erred in denying pre-trial disclosure of the identity of the CI. "Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." ***Commonwealth v. Watson***, 69 A.3d 605, 607 (Pa. Super. 2013) (citation omitted).

> The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth.

***Id***., at 607-608 (internal citations omitted).

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communications, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations, the trial court may require disclosure and, if the Government withholds the information, dismiss the action.
>
> No fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime

*(Footnote Continued)* ───────────────

ultimately be determined to be erroneous. We cannot reach that issue at this time.

charged, the possible defense, the possible significance of the informer's testimony, and other relevant factors.

***Commonwealth v. Marsh***, 997 A.2d 318, 322 (Pa. 2010) (Opinion Announcing the Judgment of the Court) (citation omitted).

The initial burden requires the defendant to "demonstrate a reasonable possibility the informant could give evidence that would exonerate him." ***Commonwealth v. Belenky***, 777 A.2d 483, 488 (Pa. Super. 2001) (citation omitted). A defendant does not meet this burden by "mere assertion" that disclosure of the CI's identity would be helpful to the defense. ***Id***.

The Supreme Court of Pennsylvania has held that where a single police officer is the only eyewitness to a crime other than the CI, the arrest was not made shortly after the crime, and the defendant has presented evidence supporting a mistaken identity defense, justice requires the disclosure of the CI's identity. ***See Commonwealth v. Payne***, 656 A.2d 77, 80 (Pa. 1994). Disclosure could still be withheld, however, if the Commonwealth presents evidence that the CI's safety would be threatened thereby. ***See Marsh***, 997 A.2d at 324.[2]

---

[2] The opinion announcing the judgment of the court in ***Marsh*** garnered the support of three Justices. A concurring opinion, which criticized the lead opinion's analysis of evidence concerning safety of a CI, garnered the support of the three remaining Justices. Justice Greenspan did not participate in the decision. All six Justices agreed that safety of the CI was an appropriate concern; the concurrence held that the identity of the CI should not be withheld without evidence of a "reasonably specific type of danger." 997 A.2d at 326 (citation omitted). We therefore conclude that
*(Footnote Continued Next Page)*

Here, there was no hearing on Bates's oral, pre-trial motion.[3] However, given that Bates testified at trial, it is clear that he was prepared to testify during a hearing on this motion. At trial, Bates testified that he did not commit the crime. **See** N.T., Trial, 6/10/15, at 54-55. The only positive identification evidence that Bates was the perpetrator came from Sergeant Hopkins, who admitted that the transaction with the CI was the first time he had met Bates. **See id**., at 14. He did not arrest Bates at the time, but waited approximately one and one-half months to file charges. **See id**., at 25.

Under these circumstances, we conclude that **Payne** controls the resolution of the first element of the balancing test. Bates established that the identity of the CI was material to his mistaken identity defense. Furthermore, he established that, absent evidence of a "reasonably specific type of danger" to the CI, disclosure of the identity was warranted. **See Commonwealth v. Bing**, 713 A.2d 56, 60 (Pa. 1998).

However, since the Commonwealth was also denied the chance to present evidence on this issue, we cannot rule as a matter of law on this record. At trial, the Commonwealth did present testimony of general

*(Footnote Continued)* ——————

**Marsh** did not alter the rule requiring evidence of a "reasonably specific type of danger" to the CI set forth in **Bing**, **infra**.

[3] Neither the Commonwealth nor the trial court dispute Bates's contention that he made such a motion in open court while the jury was being selected.

concerns about revealing the identity of a CI. *See* N.T., Trial, 6/10/15, at 8. This evidence would not establish a reasonably specific type of danger to the CI in this case. Since the issue of the CI's safety was no longer directly relevant to the trial, it is possible that the Commonwealth could have adduced further evidence on this issue in a hearing on Bates's motion. We would therefore remand for such a hearing in the trial court to determine if a new trial is necessary. Accorindingly, we vacate the trial court's ruling in this regard and remand for a hearing.

Unfortunately, this is not the only error committed by the trial court in this matter. The trial court also impacted Bates's mistaken identity defense by denying him the opportunity to present the testimony of Bates's girlfriend, Ali Marinkov. Bates proffered that Marinkov would testify that, during the time in question, she was using drugs and that she would drive Bates's car for other individuals, not Bates, to sell narcotics. *See id*., at 43-44. The trial court denied the request, holding that Marinkov was an alibi witness of whom Bates had not provided sufficient notice to the Commonwealth. *See id*.

The trial court and the Commonwealth continue to argue that Marinkov was an alibi witness, as her testimony would place Bates somewhere other than the scene of the crime. However, Marinkov's testimony did not place Bates at any particular place, and therefore did not constitute an alibi. *See Commonwealth v. Bryant*, 855 A.2d 726, 742 (Pa. 2004). Thus, the trial

court erred in denying the request on this ground. In doing so, the court prevented further development of the proffer to allow for a thorough examination of the relevance of Marinkov's testimony. We therefore cannot reach the issue, despite the Commonwealth's arguments. Thus, we vacate this ruling and remand for both sides to be given an opportunity to provide proffers or evidence addressing the issue of relevance.

Finally, the trial court denied Bates's request to enter a photograph of himself and his brother on the ground that Bates could not authenticate the photograph without the testimony of the person who took the photograph. Photographs "may be authenticated by testimony from a person who has sufficient knowledge that the photograph fairly and accurately reflects what the proponent is purporting that photograph to reflect." *Commonwealth v. Loughnane*, 128 A.3d 806, 814 (Pa. Super. 2015). Bates proffered to identify himself and his brother in the photograph. *See* N.T., Trial, 6/10/15, at 51. This proffer would have been sufficient to authenticate the photo.

Once again, the Commonwealth argues that, in any event, the photograph was irrelevant. In this instance, we agree. Bates denied that he was accusing his brother of being the perpetrator. *See id*., at 56-57. "I don't know who it was. I know it was my car used, I know that, but it wasn't me." *Id*., at 57. Pursuant to that the testimony, the photograph was not relevant to any issue at trial. Bates is therefore due no relief on this issue.

Judgment of sentence affirmed in part and vacated in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Platt joins the memorandum.

Judge Olson files a concurring/dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/2017