J. S58013/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
FRANK KRIDER, JR., : No. 108 MDA 2017
:
Appellant :


Appeal from the Judgment of Sentence, August 2, 2016,
in the Court of Common Pleas of York County
Criminal Division at No. CP-67-CR-0006700-2015


BEFORE: GANTMAN, P.J., SHOGAN, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED DECEMBER 05, 2017**

Frank Krider, Jr. appeals the judgment of sentence in which the Court of Common Pleas of York County sentenced him to serve a term of two and one-half to five years imprisonment after a jury convicted him of two counts of possession with intent to deliver (heroin).[1] After careful review, we affirm.

Prior to September 22, 2015, Officer Adam Bruckhart ("Officer Bruckhart") of the West Manchester Township Police Department and a special detective with the York County Drug Task Force cultivated a relationship with a confidential informant ("CI") and used him more than eight times. The CI had provided Officer Bruckhart with information that led

---

[1] 35 P.S. § 780-113(a)(30).

to arrests every time. (Notes of testimony, 3/28/16 at 4-5.) Prior to September 22, 2015, the CI informed Officer Bruckhart that a drug dealer known as "Amir" lived in the area of 652 Front Street and that the CI regularly purchased heroin from this person. (*Id.* at 5-6.) The CI provided Officer Bruckhart with a telephone number to contact the person that the CI knew as Amir. On September 22, 2015, Officer Bruckhart told the CI to telephone "Amir" to arrange a meeting to purchase heroin. The CI made the telephone call in the presence of Officer Michael Miller ("Officer Miller") of the Southern Regional Police Department who was also assigned to the York County Drug Task Force. After the call was made, Officer Bruckhart directed Officer Miller to search the CI for contraband. Officer Bruckhart also provided Officer Miller with funds to give to the CI. Officer Bruckhart directed Officer Miller to escort the CI to the area of Parkway Boulevard and Bare Avenue. Officer Bruckhart stationed himself outside the suspected drug dealer's residence. Officer Bruckhart observed appellant walk out of the Front Street residence. (*Id.* at 6-7.) Officer Miller observed the CI and appellant make physical contact with their hands. (*Id.* at 28.) Trooper Justin Dembowski ("Trooper Dembowski") of the Pennsylvania State Police and the York County Drug Task Force also observed a hand-to-hand transaction between the CI and appellant. (*Id.* at 33.) The CI turned over a bundle of heroin to Officer Miller after meeting with appellant. (*Id.* at 11, 23.) Officer Miller searched the CI upon their returning to the office. (*Id.*

at 30.) Officer Bruckhart field tested the suspected heroin with a positive result. (**Id.** at 11.)

On September 30, 2015, Officer Bruckhart set up a second buy-walk transaction. The same CI called the same telephone number and, at Officer Bruckhart's direction, arranged to purchase a bundle of heroin. Officer Bruckhart heard the voice on the other end of the phone line agree to the transaction. Officer Bruckhart searched the CI for contraband and did not find anything. He then provided Detective Fenstermacher with funds and told Detective Fenstermacher to give these official funds to the CI and to follow the CI to the area. Officer Bruckhart searched the CI's car. (**Id.** at 9-10.) Officer Bruckhart observed appellant leave his residence and walk toward where the CI was parked. He did not observe directly but learned through radio traffic that appellant went directly to the CI's vehicle and entered the front passenger seat. (**Id.** at 10.) Trooper Dembowski observed the CI meet with appellant. (**Id.** at 36.) The CI turned over a bundle of heroin which he claimed to have obtained from appellant. It was field tested with a positive result. (**Id.** at 11-12.)

Based on these two transactions, Officer Bruckhart applied for and obtained a search warrant for 652 Front Street. Appellant was present when the search was conducted. Appellant had a cellphone in his hand and $26 in cash in his pocket. Various paperwork at the residence was addressed to appellant. A cellphone bill for the telephone number that the CI called to

arrange the buys was found in the residence. The police officers also found a large number of pink and blue glassine bags which are often used to package heroin. The police also found a digital scale and a bag of rice which are typically used to package heroin. (*Id.* at 13-14.)

On November 10, 2015, the York County District Attorney charged appellant with two counts of possession with intent to deliver (heroin) as a result of the two buys with the CI.

On February 9, 2016, appellant filed a pretrial motion to have the identity of the CI disclosed because the police reports did not identify the items that were exchanged between the CI and appellant. As a result, appellant believed that the CI was a material witness to the case and that his or her identification was relevant to the defense.[2]

Officer Bruckhart later testified at the omnibus pretrial hearing on March 28, 2016, that the CI's safety could be compromised if his identify were revealed. (*Id.* at 45.)

Following the hearing, the trial court denied the motion and reasoned:

> With respect to the need to keep the confidential informant confidential, there was no testimony that there is an ongoing investigation at this time which would be compromised. However, there is the issue of safety of the confidential informant. There is a reason that there is a presumption on confidentiality, and we don't believe that the defense has overcome that. We are not

---

[2] Appellant also moved to suppress evidence obtained pursuant to a search warrant. The denial of that motion is not before this court.

going to order the disclosure of the confidential informant.

Order, 3/28/16 at 2.

Following a trial on May 23-25, 2016, the jury convicted appellant of both charges. On August 2, 2016, the trial court sentenced appellant to an aggregate term of two and one-half to five years' imprisonment. On August 12, 2016, appellant moved for post-trial relief which the trial court denied on December 12, 2016.[3]

On January 13, 2017, appellant filed a notice of appeal. On January 23, 2017, the trial court ordered that appellant file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On February 8, 2017, the trial court granted appellant an extension to file the concise statement. Appellant filed his Rule 1925(b) statement on February 16, 2017. The trial court issued its Rule 1925(a) opinion on May 4, 2017.

Appellant raises the following issue for this court's review:

> Whether the trial court erred in denying [appellant's] request for disclosure of the identity of the [CI] who was the linchpin of the Commonwealth's case where there is a reasonable possibility that the [CI] could have exonerated [appellant] because none of the witnesses saw what, if anything, was exchanged between [appellant] and the [CI] and disclosure would have posed no particularized danger.

---

[3] The order that denied post-trial relief was not served on appellant until December 14, 2016.

Appellant's brief at 4.

When reviewing the denial of a motion to disclose the identity of a CI, our standard of review is "to determine whether the trial court abused its discretion in denying appellant's request for discovery." **Commonwealth v. Belenky**, 777 A.2d 483, 487 (Pa.Super. 2001), citing **Commonwealth v. Roebuck**, 681 A.2d 1279, 1282 (Pa. 1996).

The ability to compel disclosure of the identity of a confidential informant flows from the right to discovery contained in the Rules of Criminal Procedure. Pa.R.Crim.P. 573 (B)(2)(a)(i). A defendant has a qualified right to discovery of the names of eyewitnesses. However, when the eyewitness is a confidential informant, police departments have a well-placed reluctance to disclose the identity of such eyewitnesses and, in fact, a recognized privilege to refuse disclosure of the identity of informants. **Commonwealth v. Bing**, 713 A.2d 56, 58 (Pa. 1998). The privilege is not absolute, however, and must give way under appropriate circumstances.

When moving for disclosure, the defendant must first show "that the information sought is material and the request is reasonable." **Interest of D.B.**, 820 A.2d 820, 822 (Pa.Super. 2003). The defendant must "demonstrate a reasonable probability the informant could give evidence that would exonerate him. More than a mere assertion that disclosure of the informant's identity might be helpful is necessary." **Belenky**, 777 A.2d at 488 (internal citations omitted). If the defendant satisfies this burden, then

the trial court must apply a balancing test, with "the balance initially weigh[ing] in favor of maintaining confidentiality of the informant's identity in order to preserve the public's interest in effective law enforcement." *Commonwealth v. McCulligan*, 905 A.2d 983, 989 (Pa.Super. 2006).

"[T]he defendant must lay an evidentiary basis or foundation that the confidential informant possesses relevant information that will materially aid the defendant in presenting his or her defense and that the information is not obtainable from another source." *Commonwealth v. Hritz*, 663 A.2d 775, 780 (Pa.Super. 1995). *See Commonwealth v. Eicher*, 605 A.2d 337, 348 (Pa.Super. 1992), *appeal denied*, 617 A.2d 1272 (Pa. 1992) (appellant seeking disclosure of informant must have "concrete evidence" corroborating defense theory "other than his own self-serving allegations"; absent "more specific evidence," the trial court is not required to compel disclosure and allow the defense to conduct a fishing expedition). Only if the defendant makes this threshold showing must the trial court weigh the competing interests to determine whether the informant's identity should be revealed. *Commonwealth v. Marsh*, 997 A.2d 318, 322 (Pa. 2010) (plurality); *Bing*, 713 A.2d at 58; *Belenky*, 777 A.2d at 488.

Initially, appellant argues that he made the threshold showing needed to trigger the balancing test. Appellant avers that his counsel argued before the trial court that because no one other than the CI had firsthand knowledge of what specifically was exchanged, the CI's testimony was

necessary for appellant's defense because only the CI could testify as to what he received from appellant. Further, appellant argues that there was no testimony at the hearing to suggest that the CI was reliable because there was nothing to establish his reliability other than that he had supplied information that led to felony arrests. Appellant asserts that the CI could give exonerating evidence as to what, if anything, was exchanged.

In addition, appellant argues that the Commonwealth failed to establish that there was any disclosure that would create any danger for the CI as Officer Bruckhart testified that there was always a risk of intimidation but did not point to anything specific. Further, Officer Bruckhart testified that the disclosure would not jeopardize any ongoing investigations. Appellant asserts that the CI's identity was material to his defense and the request to disclose the identity was reasonable.

The Commonwealth, on the other hand, argues that appellant failed to establish that disclosure of the CI's identity was material to the preparation of appellant's defense. The Commonwealth makes this assertion based on appellant's failure to do more than aver in its disclosure motion that the CI was a material witness to the case and that his or her identification was relevant to the defense. The Commonwealth asserts that appellant did not aver what his defense at trial would be and did not allege what evidence he expected the CI to provide that would exonerate him.

However, at the hearing, appellant's counsel questioned the Commonwealth's witnesses and elicited testimony that none of the witnesses saw what was actually exchanged between appellant and the CI; the CI was allowed to travel to and from the second buy-walk with his or her own car; the searches of the CI were inadequate in that personal searches were over the clothes frisks; no drugs were found when the police officers executed the search warrant; revealing the CI's identity would not compromise any ongoing investigation; and there were no specific threats or intimidation in this case. (Notes of testimony, 3/28/16 at 15, 17-18, 20, 26, 28, 39, 42, and 45-46.)

From appellant's motion, argument presented by his counsel at the hearing, and testimony presented by the police officers on cross-examination, it appears that appellant believed that the CI would be the only witness who could identify what, if anything, was exchanged between the CI and appellant. The CI's identity and testimony were material to appellant's defense as the CI could possibly provide exonerating evidence in support of appellant. As to the reasonableness prong of the threshold test, appellant believed there was no investigation that would be compromised and no particularized threat to the CI.

The trial court determined that the CI was material to appellant's case and that the reasonableness of the request was self-evident where the CI's reliability could not be quantified because the police officers were unsure if

any convictions had resulted from the CI's work. (Trial court opinion, 5/4/17 at 10.) This court finds that the trial court did not abuse its discretion when it found that the request for disclosure of the CI's identity met the threshold. Theoretically, the CI could provide evidence that would be helpful to appellant without proof that the disclosure would be unreasonable.

Appellant next contends that the trial court abused its discretion when it did not order disclosure of the CI's identity. Appellant argues that his right to prepare and present a defense significantly outweighed the Commonwealth's interest in preserving the confidentiality of the informant. Specifically, appellant asserts that the CI's testimony was critical to his defense and stood a reasonable chance of exonerating him. Appellant relies on **Commonwealth v. Roebuck**, 681 A.2d 1279 (Pa. 1996), for the proposition that when the only eyewitness to the transaction other than a police officer is a confidential informant, a court is more likely to favor disclosure. Although appellant concedes that more than one police officer witnessed the transactions as opposed to the single witness in **Roebuck**, appellant argues that the perspective of a non-police witness adds a quality necessary to extinguish doubt about.

Further, appellant asserts that the quality of the testimony of the police witnesses was lacking in that these witnesses, though witnesses to the hand-to-hand transactions, could not be certain as to whether there were actual drug transactions, so that the jury would need to believe the CI

could be trusted in order to convict appellant. Had the police conducted a strip search or a body cavity inspection prior to the buys, it would have reduced the opportunity for the CI to conceal drugs and then report them as having been obtained from appellant. Additionally, the fact that the police did not recover any drugs in the search of appellant's residence, the CI's credibility remained critical. On the other side of the equation, the Commonwealth failed to establish that there was a clear need to maintain the confidentiality of the informant.

When a trial court has the task of determining whether the identity of the informant is to be revealed, the trial court must balance the public interest in the police's ability to obtain information against the defendant's right to prepare his defense. ***Commonwealth v. Jordan***, 125 A.3d 55, 63 (Pa.Super. 2015). The decision of whether to require the disclosure of the informant's identity depends on the circumstances of the case, including the crime charged, the possible defenses, the possible significance of the CI's testimony, and other relevant factors necessary for a fair balancing of the competing interests. ***Marsh***, 997 A.2d at 322.

Here, the trial court explained its decision to deny the request to reveal the identity of the CI:

> In the current case, in terms of balancing the free flow of information with the right to prepare a defense, we have already touched upon the notion that our research revealed no cases in which disclosure was based upon the inability of officers to state with certainty what was exchanged between

the CI and [appellant]; but, rather, the available case law seems to deal with mistaken identity and entrapment defenses. To whatever extent [a]ppellant's argument is novel, if it should succeed, it eviscerates controlled buys with confidential informants. Acknowledging the caveat that defendants have a privilege to avoid testifying, if the CI must be revealed in order for a defendant to prepare a defense—that only the CI can state with any surety what was exchanged—then the CI's identity must always be disclosed. This will greatly hamper the free-flow of information from informants to police.

In this case, we also believe there would be little significance to the CI's testimony because there were two arranged buys in which the CI met with [a]ppellant and procured an illicit substance. The officers testified that the CI was searched before each instance. Each time [a]ppellant arrived at the arranged buy-walk location. The CI then was observed to meet with [a]ppellant. Neither the CI nor [a]ppellant were seen to meet with anyone else or pick anything up. Yet, after making physical contact with [a]ppellant, in each instance, the CI was able to hand over drugs to the officers. Additionally, [a]ppellant was able to argue at trial that none of the witnesses who testified could say what was exchanged **and** [a]ppellant received the standard jury instruction on missing witnesses. There would be little significance to the CI's testimony in light of all this. And so, for all of the foregoing reasons we believe the scales were tipped against disclosure; however, our analysis does not end here for we have not added to our scales **all** of the weight that is to be measured.

We are cognizant that, "[t]he Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source." We have discussed the reasons for disclosure. "On the other side of the equation, a court should weigh, **inter alia**, the public's interest in maintaining the flow of information to the police and the safety of the

- 12 -

confidential informant." In **Marsh**, the Court lamented the inadequate weight given to testimony that the CI and other investigations were imperiled by disclosure. There was no testimony that any ongoing investigations would have been imperiled by disclosure or that the CI in our case is in any *specific* danger of reprisal; however, Detective Bruckhart did state that there is a generalized risk of retaliation or intimidation for informants. The defense will no doubt rejoin that the danger testified to by Bruckhart needed to be specific in order for it to be factored into our calculus; however, it is axiomatic that specific threats cannot have been made where the defendant is unaware of the identity of the CI. The public's interest in maintaining the free flow of information to police is not implicated in this case, but the safety of the CI is. Ergo, our belief that the scales tip against disclosure stands. We therefore humbly request affirmance as to this matter complained of.

Trial court opinion, 5/4/17 at 12-14 (emphasis in original; citations omitted).

Appellant argues that the trial court's reasoning was "both overblown and insufficient reason to uphold confidentiality." (Appellant's brief at 36.) Appellant argues that, where as here, there are huge gaps in the proof bearing directly on the CI's credibility, there is the requisite reasonable possibility and disclosure is essential. He further argues that the weaknesses in the testimony of the police officers makes it essential that he be permitted to learn the identity of the CI, whom he believes would help his defense.

On the other hand, appellant was charged with two separate heroin delivery charges that arose from the two separate police-supervised "buy-walk" operations. The CI was searched for drugs, money, and other

contraband before and after the CI's meetings with appellant. The record reflects that immediately after these meetings, the CI had heroin in his possession. Although no drugs were found at appellant's residence when it was searched, items commonly used in drug trafficking were discovered. Also, although there was no specifically identified risk to the safety of the CI, if his identity were revealed, the trial court identified the CI's safety as a factor to consider. Given the circumstances presented here, the trial court did not abuse its discretion when it denied the motion to disclose the CI's identity.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/5/2017