J-S81039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TERRANCE LAMONT EDMONDS, | |
| Appellant | No. 897 MDA 2017 |

Appeal from the Judgment of Sentence May 5, 2017
in the Court of Common Pleas of York County
Criminal Division at Nos.: CP-67-CR-0001412-2016
CP-67-CR-0003899-2016

BEFORE: PANELLA, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: FILED MARCH 08, 2018

Appellant, Terrance Lamont Edmonds, appeals from the judgment of sentence imposed following his jury conviction of possession with intent to deliver a controlled substance and delivery of a controlled substance, at the above-listed docket numbers.[1] We affirm.

The trial court aptly set forth the facts and procedural history of this case in its August 14, 2017 opinion[2] as follows:

On October 27, 2015, the York County Drug Task Force and the West Manchester Township Police Department conducted a drug investigation focused on [Appellant]. On that date, Officer

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] *See* Pa.R.A.P. 1925(a).

Adam Bruckhart, a police officer with West Manchester Township who is employed full time as a special detective with York County Drug Task Force, utilized a confidential informant (CI) in the course of the drug investigation to engage in a controlled purchase of heroin from [Appellant]. Using official funds, Officer Bruckhart and Officer [Patrick] Gartrell supplied the confidential informant with two-hundred dollars ($200.00) and the CI engaged in a controlled delivery where [Appellant] supplied the CI with over twenty (20) bags of heroin, or two bundles of the drug. During the controlled buy, [O]fficer Bruckhart observed [Appellant's] vehicle, a white Chevrolet pickup truck. At the conclusion of the controlled buy, Officer Bruckhart followed [Appellant] three (3) to four (4) blocks to the Smoker's Outlet, located in Spring Garden Township, where he and several other officers initiated an arrest of [Appellant]. However, before taking [Appellant] into custody, Officer Bruckhart observed another individual[, Justin Huson,[3]] standing at the passenger side window of [Appellant's] truck with cash in hand, supposedly buying drugs from [Appellant]. In the process of arresting [Appellant], Officer Bruckhart observed a soft, lunch box sized, cooler by [Appellant's] feet which contained [eighty-seven bags] of heroin. After pulling him from his truck, Officer Bruckhart searched [Appellant] and found two cell phones, and the two-hundred dollars ($200.00) of official funds used during the controlled buy. Following his arrest, [Appellant] was charged with the above listed offenses.[[4]]

On March 2[2], 2017, following the conclusion of a jury trial, the jury unanimously found [Appellant] guilty of both possession with the intent to deliver heroin and [delivery] of heroin. On May 5, 2017, in case 1412-2016, [Appellant] was sentenced to three and one-half (3 1/2) years to seven (7) years' incarceration, and in case 3899-2016, [Appellant] was sentenced to a term of three (3) to six (6) years' incarceration, to run consecutive to the sentence imposed in 1412-2016.

---

[3] Justin's surname also appears as "Hewson" in the record; we have taken the predominant spelling.

[4] Relevant to the instant appeal, Appellant filed a motion to suppress evidence in case 1412-2016, and a motion to disclose the identity of the CI in case 3899-2016. The trial court denied both motions on October 5, 2016, following a hearing.

On May 30, 2017, [Appellant], by and through his attorney, Richard Robinson, Esquire, filed a timely notice of appeal. On June 6, 2017, this court directed [Appellant] to file a concise statement of errors complained of on appeal pursuant to [Pa.R.A.P.] 1925(b), giving [him] twenty-one (21) days after the entry of the order to file his response. On June 22, 2017, [Appellant] timely filed his statement of matters complained of on appeal. . . .

(Trial Court Opinion, 8/14/17, at 2-4) (record citations and some capitalization omitted).

Appellant raises the following issues for our review:

I. Whether the honorable trial court erred in denying Appellant's motion to suppress in case 1412 CA 2016 on the following grounds: the arrest and subsequent search and seizure of the Appellant and his property was illegal; arresting officers did not have sufficient probable cause to arrest the Appellant and subsequently conduct a search of the Appellant and his property; the confidential informant was not established to be a reliable confidential informant in that there was nothing stated in the affidavit or at the hearing about prior information provided by the confidential informant which led to arrests and convictions; the officers did not engage in any investigation to corroborate the information provided by the confidential informant[?]

II. Whether the honorable trial court erred in denying Appellant's motion to disclose identity of confidential informant in case number 3899 CA 2016 on the following grounds: none of the police officers involved, or any other witnesses, observed what transpired between the Appellant and the confidential informant; as a result, the confidential informant would be the only witness which the Appellant should have been entitled to cross examine; the overall evidence in the case involved the questionable reliability of the confidential informant which made it imperative that the Appellant have an opportunity to examine the confidential informant or at [] least interview prior to trial; none of the alleged conversations between the Appellant and confidential informant were recorded or preserved which made it imperative that Appellant examine the confidential informant or at least interview the confidential informant prior to trial[?]

III. Whether the honorable trial court erred in overruling defense counsel's objection to testimony of Commonwealth witness Cyle Kennell about hearsay conversations with another individual concerning the purchase of heroin which did not fall into the co-conspirator exceptions[?]

(Appellant's Brief, at 4) (most capitalization omitted).

Appellant first challenges the trial court's denial of his motion to suppress, arguing that the police lacked sufficient probable cause to arrest him. (**See id.** at 10-13). He contends that the Commonwealth failed to establish the reliability of the CI where the information the CI provided was not corroborated by any independent police investigation. (**See id.**). This issue does not merit relief.

Our standard of review of claims challenging the denial of a suppression motion is as follows:

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.
>
> In reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary.

**Commonwealth v. Livingstone**, 174 A.3d 609, 618–19 (Pa. 2017) (citations omitted).

"[A]ppellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." **Commonwealth v. Bush**, 166 A.3d 1278, 1281–82 (Pa. Super.

2017) (citation omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Id.* at 1282 (citation omitted).

> The existence of probable cause for an arrest is assessed by using the following principles:
>
>> Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances.
>>
>> . . . It is the facts and circumstances within the personal knowledge of the police officer that frames the determination of the existence of probable cause.

*Commonwealth v. Weaver*, 76 A.3d 562, 565 (Pa. Super. 2013), *aff'd*, 105 A.3d 656 (Pa. 2014) (citations and emphasis omitted).

"The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity." **Bush**, **supra** at 1283 (citation omitted).

"[A] determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner." *Commonwealth v. Gagliardi*, 128 A.3d 790, 795 (Pa. Super. 2015) (citation omitted). Information provided by a CI "may constitute probable cause where

police independently corroborate the [information], or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity." *Id.* at 795-96 (citation omitted).

In this case, the trial court found the testimony of Officers Bruckhart and Gartrell credible, and the information provided by the CI reliable. (*See* Trial. Ct. Op., at 9-10). It denied Appellant's suppression motion based upon the following facts, which are supported by the testimony at the suppression hearing:

> On October 27, 2015, Officer Bruckhart stated that he had made contact with a confidential informant regarding a controlled buy. Officer Bruckhart, whom this [c]ourt found credible, had previously worked with this CI and this CI had provided information on more than five (5) occasions. The information previously provided by the CI had assisted Officer Bruckhart in making felony drug arrests. Officer Bruckhart found this CI to be credible. Officer Bruckhart testified that he met with the CI and the CI provided information about [Appellant]. Particularly, the CI stated that [Appellant], known in the community as Jazz, drives around in a white Chevrolet pickup truck and always has heroin in the vehicle. Based on that information, Officer Bruckhart and the CI agreed to perform a controlled purchase of heroin from [Appellant]. Through text messages, the CI set up the transaction. After the CI set up the transaction, Officer Bruckhart arranged with Officer Patrick Gartrell to control the CI and he, Officer Bruckhart, would perform surveillance.

> \*    \*    \*

> . . . Officer Gartrell stated that he met with the CI prior to the controlled buy and searched the CI prior to the interaction with [Appellant] to confirm that the CI was free of any drugs, money, or contraband. After doing so, Officer Gartrell provided the CI with two-hundred dollars ($200) in official funds, which were

photocopied before they were given to the CI, to use for purchasing the heroin.

Officer Gartrell testified that he witnessed the CI make contact with [Appellant], both by observing the CI on their cell phone with [Appellant] and by texting with [Appellant] for the purpose of arranging the controlled buy. Eventually, the CI and Officer Gartrell moved to the location in which [the CI] was to meet [Appellant]. At that location, Officer Gartrell kept the CI under continuous surveillance. Officer Gartrell stated that when [Appellant] arrived in his truck, the CI walked up to [Appellant's] truck and got in. Less than a minute later, [] Officer Gartrell observed the CI get out of [Appellant's] truck and the CI started to walk back to where Officer Gartrell was stationed.

The CI returned to Officer Gartrell's vehicle and handed Officer Gartrell a quantity of heroin that he had just purchased from [Appellant]. The CI informed Officer Gartrell that [he] had observed an additional amount of heroin under the driver's side seat in [Appellant's] truck. The CI also stated that [Appellant] was heading to the Smoker's Outlet, which was not far from their current location, to conduct a heroin transaction with another individual.

. . . [T]he officers followed [Appellant] to the Smoker's Outlet where he was seen providing another individual with heroin, and was subsequently arrested.

(*Id.* at 6-8) (record citations omitted).

Thus, the record reflects that Officer Bruckhart had worked with this CI on five occasions in the past, and that the information the CI provided was reliable in that it led to felony drug arrests. (*See* N.T. Suppression Hearing, 10/05/16, at 14). Officer Gartrell personally observed the CI make contact with Appellant via text messages and a phone call to arrange the controlled heroin purchase. (*See id.* at 4-5). During execution of the controlled buy, the officer accompanied the CI to the agreed-upon location, and kept him under continuous surveillance. (*See id.* at 5-6). Less than one minute after

- 7 -

the CI entered Appellant's vehicle, he returned to Officer Gartrell with a quantity of heroin, and information that Appellant had additional heroin in his vehicle and was on his way to conduct another heroin delivery at a nearby location. (*See id.* 6-7). The officers corroborated this information by following Appellant to the specified location, where they observed Justin Huson approach Appellant's truck with money in his hands to conduct an apparent drug transaction. (*See id.* 16-17).

Based on the foregoing, viewing the totality of the circumstances, we conclude that police had ample probable cause to arrest Appellant. *See Weaver*, *supra* at 565. The information from the CI, (who had provided accurate information of criminal activity in the past,) as substantiated by the experienced narcotics officers' direct observation of the conduct of Appellant and the CI, was sufficient to warrant a person of reasonable caution to believe that Appellant was selling drugs at that time. *See id.*; *Gagliardi*, *supra* at 795–96. Appellant's first issue merits no relief.

Appellant next challenges the trial court's denial of his motion seeking disclosure of the CI's identity. (*See* Appellant's Brief, at 13-15). Appellant maintains that because the CI's reliability and credibility were in question, he should have had the opportunity to confront the CI. (*See id.* at 13, 15). He claims that the CI's testimony was necessary to prepare his defense where the CI was the only eyewitness to the alleged transaction, and there could have been valid reasons for him to meet with the CI. (*See id.*). This issue lacks merit.

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." ***Commonwealth v. Watson***, 69 A.3d 605, 607 (Pa. Super. 2013) (citation omitted).

> Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness:
>
> > (a) In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:
> >
> > (i) the names and addresses of eyewitnesses. . . .
>
> Pa.R.Crim.P. 573(B)(2)(a)(i).
>
> The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth.
>
> In striking the proper balance, the court must consider the following principles:

- 9 -

A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations[,] the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

[N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Commonwealth v. Marsh*, 997 A.2d 318, 321–22 (Pa. 2010) (case citations omitted).

Regarding the threshold inquiry of materiality and reasonableness, this Court has explained:

. . . The defendant need not predict exactly what the informant will say, but he must demonstrate a reasonable possibility the informant could give evidence that would exonerate him. More than a mere assertion that disclosure of the informant's identity might be helpful is necessary. Only after this threshold showing that the information is material and the request reasonable is the trial court called upon to determine whether the information is to be revealed.

*Commonwealth v. Belenky*, 777 A.2d 483, 488 (Pa. Super. 2001) (citations omitted).

Here, the trial court determined that Appellant failed to meet the threshold burden. (*See* Trial Ct. Op., at 12-14). Upon review, we agree.

We first note our disagreement with Appellant's contention that the CI's reliability and credibility were in question. As discussed at length above, the CI's trustworthiness was established through the credible testimony of Officers Bruckhart and Gartrell, who gained valuable information from the CI in the past, and substantiated information the CI provided regarding Appellant through personal observation.

Furthermore, Appellant fails to "demonstrate a reasonable possibility the [CI] could give evidence that would exonerate him[,]" or raise "[m]ore than a mere assertion that disclosure of the [CI's] identity might be helpful[.]" ***Belenky***, ***supra*** at 488 (citations omitted). In his brief, Appellant merely makes the bald, vague assertion that: "there could have been other legal reasons for the CI and Appellant to meet," and "[t]here could have been other reasons that the CI was in contact and had arranged to meet." (Appellant's Brief, at 13, 15). Appellant likewise fails to offer a cogent explanation of how the CI's testimony could have aided in his defense, in light of his possession of eighty-seven bags of heroin at the time of his arrest. (*See* N.T. Trial, 3/21/17, at 78). Given the lack of support for disclosure, we discern no abuse of discretion in the trial court's ruling against it. ***See Watson***, ***supra*** at 607.

In Appellant's final issue, he argues the trial court erred in permitting Commonwealth witness Cyle Kennell to testify regarding hearsay

conversations he had with Justin Huson, concerning the purchase of heroin. (**See** Appellant's Brief, at 15-18).  This issue does not merit relief.

"Our standard of review relative to the admission of evidence is for an abuse of discretion."  **Commonwealth v. Feliciano**, 67 A.3d 19, 27 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013) (citation omitted).

"Hearsay is defined as a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) the party offers in evidence to prove the truth of the matter asserted in the statement.  Pa.R.E. 801(c)."  **Commonwealth v. Williams**, 2017 WL 6154484, at *20 (Pa. Super. filed Dec. 8, 2017).  "Communications that are not assertions are not hearsay.  These would include questions, greetings, expressions of gratitude, exclamations, offers, instructions, warnings, etc."  Pa.R.E. 801, cmt.

 Here, the trial court determined that the testimony at issue was not hearsay.  (**See** Trial Ct. Op., at 16).  Upon review, we agree.

Appellant challenges the following exchange:

Q. Okay.  And, Mr. Kennell, going back to the afternoon of October 27th of 2015, did anything happen to you that afternoon that brings you to court today?

A. My friend, Justin Huson, called me and **asked** me if—

[Defense Counsel]: Your Honor, I object to conversations between him and this other individual being hearsay.

\* \* \*

THE COURT: I am going to overrule the objection.

You may answer the question.

- 12 -

[A.] Justin called me, **asked** me if I could pick him up after work to run out to the city and—you know, every time he called me, it was to go pick up—you know, get drugs, heroin in particular.

(N.T. Trial, 3/22/17, at 151-53) (emphases added); (**see also** Appellant's Brief, at 16-17).

We conclude that the testimony in question was not an assertion admitted to prove the truth of the matter asserted. **See** Pa.R.E. 801, cmt. Mr. Kennell's testimony about what Huson **asked** him could not have been hearsay, by definition, because it was a question. **See id.** Further, Mr. Kennell's testimony referencing heroin was his own general description of prior phone calls with Huson; the testimony did not contain any specific assertions that Huson made. Additionally, the testimony was introduced, not for the truth of the matter asserted (*i.e.*, that every time Huson called Kennell it was to buy drugs), but to assist in creating a complete story of the events leading up to Appellant's arrest. (**See** N.T. Trial, 3/22/17, at 151) (Commonwealth explaining that testimony was within scope of what was happening on the date in question). Therefore, the trial court did not abuse its discretion in admitting the testimony. **See Feliciano**, **supra** at 27. Appellant's final issue does not merit relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/08/2018